IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGINIA A. OLLIFF,

    Plaintiff,

v.                                    Civil Action No. 3:08cv049

JOHN E. POTTER,
POSTMASTER GENERAL,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 14). For the reasons set forth below, the motion is GRANTED.

### BACKGROUND

On June 8, 2007, the Plaintiff, Virginia A. Olliff, proceeding *pro se*, filed a formal complaint against her employer, the United States Postal Service ("USPS"), alleging discrimination based on race, color, sex, age, and disability. The complaint was filed with the Equal Employment Opportunity Commission ("EEOC"). Olliff filed the EEOC complaint after the termination of her assignment to a detail away from her usual duty station ("outside detail"). After the termination of that assignment, Olliff returned to her position as a mail handler at the USPS Richmond Plant. However, Olliff claimed that she was removed from her detail on the basis of discrimination. On October 19, 2007, the EEOC issued a Final

Agency Decision that Olliff had not been subjected to the discrimination that she alleged.

On January 21, 2008, Olliff filed this action. The Complaint is vague, rambling and conclusory. Liberally construing the complaint, it appears that Olliff claims she was brought back from the outside detail and returned to the position of mail handler because of her race and gender in violation of Title VII, 42 U.S.C. § 2000e, et seq.; because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; and because of her hearing impairment in violation of the Rehabilitation Act, 29 U.S.C. § 790, et seq.

The Defendant has now moved for summary judgment under Fed. R. Civ. P. 56. The Defendant asserts that summary judgment is proper because Olliff cannot make a *prima facie* case on any of her discrimination claims. Specifically, the Defendant argues that: (1) Olliff was not subjected to an adverse employment action; and (2) even if Olliff was subjected to an adverse employment action, that does not raise a reasonable inference of unlawful discrimination.

## STATEMENT OF FACTS

Olliff is a forty-three year-old Caucasian female who suffers from a hearing impairment. She was a mail handler, level/grade 04 for the USPS Richmond Plant from June 6, 1987 through October 2007. (Pulling Decl. ¶ 5); see also (Pulling Ex. 1.) The USPS hired

2

Olliff through the Department of Rehabilitation Services as part of an effort to recruit the deaf and hard of hearing into the USPS. (Olliff Dep. 15:17-22.) During her tenure with the USPS, Olliff's official position and salary/grade level as a mail handler did not change.  (Pulling Decl. ¶ 5.)

However, in March 2000, Olliff was assigned to the outside detail as an ad hoc interpreter for the hearing impaired.  She was to serve in this position on an as-needed basis.  (Pulling Dec. ¶ 6); (Pulling Ex. 3.)  The outside detail was not a permanent position and was subject to change or elimination at any time. (Pulling Decl. ¶ 7.)  From time to time, Olliff worked with USPS Main Headquarters in Washington D.C. on various detail assignments related to her interpretation duties as well.  (Pulling Decl. ¶ 9.) When Olliff returned from these detail assignments, she would continue working as an ad hoc interpreter on the original outside deal.  (Compl. unnumbered ¶ 14.)

In early 2007, Darryl Martin became the Senior Plant Manager of the USPS Richmond Plant.  (Pulling Decl. ¶ 8); (Martin Decl. ¶ 3.)  Soon after becoming the Senior Plant Manager, Martin learned that a number of the Richmond Plant employees, including Olliff, were assigned to outside details.  (Pulling Decl. ¶ 8); (Martin Decl. ¶ 5.)  Martin required all detailed employees to return to the Richmond Plant in their official positions in order to meet the plant's staffing requirements.  (Id.)  Martin denied a request to

3

extend Olliff's outside detail because of staffing concerns.  <u>See</u>
(Martin Decl. ¶ 6.)  As a result, Olliff was required to return to
the Richmond Plant to her permanent position as a mail handler.

When Martin made the decision to bring all detail employees
back to the Richmond Plant, he did not know the name, sex, race,
age, or disabilities of any of those employees, including the
Plaintiff.  <u>See</u> (Martin Decl. ¶ 8); (Olliff Dep. 51:21-52:23.)
When Martin denied Olliff's request for an extension of the outside
detail, he only knew that she was a female and a mail handler.  He
did not know her race, age, or disability.  (Martin Decl. ¶ 6.)

Olliff bases her discrimination claims upon Martin's decision
to return her to her official position as a mail handler.

DISCUSSION

## I.    Standard of Review

The standard applicable to summary judgment motions is well-
established.  Summary judgment is proper only when there are no
genuine issues as to any material facts, and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Summary
judgment is not a disfavored procedural shortcut, but rather is an
integral part of the Federal Rules of Civil Procedure designed to
secure the just and expeditious resolution of every civil matter.
<u>Graham v. Pactiv Benefits Comm.</u>, 301 F. Supp. 2d 483, 491-492 (E.D.
Va. 2004).

4

In reviewing a motion for summary judgment, a court must view the facts, and any inferences drawn from these facts, in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party is entitled to have its version of all that is disputed accepted, to have all reasonable inferences construed in its favor, to have all factual conflicts resolved in its favor, and to have the benefit of all favorable legal theories invoked by the evidence. Kohl's Dept. Stores, Inc. v. Target Stores, Inc., 290 F. Supp. 2d 674, 678 (E.D. Va. 2003). The party who bears the burden of proof on an issue at trial, however, cannot survive summary judgment without sufficient evidence to sustain his burden of proof on that point. Celotex Corp., 477 U.S. at 323. Accordingly, on those issues that the nonmoving party will have the burden of proof, it is her responsibility to rebut the summary judgment motion with an affidavit or other objective evidence to show the existence of a genuine issue of fact. See Celotex Corp., 477 U.S. at 324. There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

II. **Employment Discrimination Claims and The McDonnell Douglas Burden-Shifting Scheme**

There are two methods for proving intentional employment discrimination: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the burden-shifting scheme introduced in McDonnell Douglas v. Green. 411 U.S. 792, 802-05 (1973). In the first mode of proof, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Rhodes v. F.D.I.C., 257 F.3d 373, 391-92 (4th Cir. 2001) (internal quotation omitted). Looking at the record in the light most favorable to Olliff, it cannot be said that she has offered any direct or indirect evidence of intentional discrimination, but only conclusory statements and allegations. Conclusory statements, without more, simply do not meet the direct evidence standard. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). Accordingly, Olliff's claims of discrimination will be assessed under the McDonnell Douglas burden-shifting standard. See id.

The McDonnell Douglas burden-shifting standard requires that a plaintiff establish a *prima facie* case of employment discrimination. See McDonnell Douglas Corp., 411 U.S. at 802-03. Generally, the plaintiff establishes a *prima facie* case by demonstrating that she: (1) is a member of a protected class; (2)

6

was subject to an adverse employment action; and (3) the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination.    See e.g., McDonnell Douglas Corp., 411 U.S. at 802; Holland v. Wash. Homes, Inc., 487 F.3d 208, 218-19 (4th Cir. 2007).   The McDonnell Douglas burden-shifting standard applies to discrimination claims based on disparate treatment for Title VII actions, see McDonnell Douglas Corp., 411 U.S. at 802-04, ADEA claims, see Mereish v. Walker, 359 F.3d 330, 333-35 (4th Cir. 2004), and Rehabilitation Act claims, see Ennis v. Nat'l Assoc. Of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

Because it appears that Olliff alleges employment discrimination on the basis of disparate treatment under Title VII, the ADEA, and the Rehabilitation Act, she must establish a *prima facie* case under the McDonnell Douglas standard, i.e., she must show that she is a member of a protected class, that she suffered an adverse employment action, and that such employment action raises a reasonable inference of unlawful discrimination.

7

III. **Establishing a** *Prima Facie* **Case Under the** McDonnell Douglas
Standard[1]

### A.   Adverse Employment Action

An adverse employment action "is a discriminatory act which
adversely affect[s] the terms, conditions, or benefits of the
plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368
F.3d 371, 375 (4th Cir. 2004) (internal citations omitted). Thus,
it is not enough that the employee believes that a job reassignment
is less appealing or unfair. Id. at 376 (citing Von Gunten v.
Maryland, 243 F.3d 858, 868 (4th Cir. 2001)). Specifically, "[a]
reassignment can only form the basis of a valid [employment
discrimination] claim if the plaintiff can show that the
reassignment has some significant detrimental effect." Id.
(internal quotation omitted).

Olliff has not provided sufficient evidence to show that her
removal from the outside detail assignment and her return to her
position as a mail handler was an adverse employment action. By
Olliff's own admission, her position of record, as indicated on her
PS Form 50s, was a mail handler's position. (Olliff Dep. 30:6-15.)

_____

[1]For the purposes of this summary judgment motion, the
Defendant concedes that the Plaintiff demonstrated that she is a
member of a protected class in that "she is a Caucasian female over
forty years old and hearing impaired." (Def.'s Mem. In Support of
Summ. J. Mot. 9.)    Accordingly, the Court moves directly to
assessing whether the Plaintiff sufficiently proved that she
suffered an adverse employment action.

Olliff contends that she was officially an ad hoc interpreter and that the Richmond District simply did not have enough permanent positions open to change her PS Form 50s to reflect this change. (Id. 30:15-31:9.)  She supports that assertion by noting that, between 2000 and 2007, she was returned to the position of ad hoc interpreter whenever she came off of detail assignments.  (Compl. unnumbered ¶ 14.)  This gave Olliff the impression that, although her official position had not changed on her PS Form 50s, her new permanent position was as an interpreter.

Olliff's impressions concerning her position, however, do not change the fact that her official position was that of mail handler.  Nor do her impressions make her return to the position of mail handler an adverse employment action.    The official job description for the ad hoc interpreter position held by the Plaintiff indicated that she would be serving "on an as needed basis."    (Pulling Ex. 3.)    While serving as both the ad hoc interpreter and on detail assignments, the Plaintiff's official position and salary grade/level as a mail handler never changed. When the Plaintiff returned from outside detail to her mail handler's position, there was no change, adverse or otherwise, in the terms, conditions or benefits of [her] employment.

It is conceded that the Plaintiff's employment benefits were affected to the extent that she lost the additional payment of 5% of her base salary when she returned to her position as a mail

handler. However, this loss in additional salary is not the "significant detrimental effect" contemplated by the test for an adverse employment action. See James, 368 F.3d at 376; Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).

For the foregoing reasons, Olliff's return to the mail handler's position cannot be considered an adverse employment action. See James, 368 F.3d at 375.

### B. Reasonable Inference of Unlawful Discrimination

Even if the termination of the outside detail assignment is considered to be an adverse employment action, summary judgment is appropriate because she has not met the third component of a *prima facie* case – that the action was taken under circumstances that permit a reasonable inference of discrimination.

To raise a reasonable inference of unlawful discrimination, Olliff must provide more than speculative evidence, generalities, or gut feelings. Bryant v. Bell Atl., Inc., 288 F.3d 124, 134-35 (4th Cir 2002) (evidence of subjective beliefs "without more, is insufficient to create a genuine issue of material fact as to any discriminatory conduct."). Such "unsubstantiated allegations and bald assertions" of discrimination are not adequate to defeat summary judgment. Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).

The undisputed record shows that, when Martin decided, to recall all employees on outside detail, he did so to meet the

demand for employees at the plant.   And, Martin was not aware of the race, age, gender or disability status of any affected employee.   Olliff has offered no proof to support any of her discrimination claims.

### (i)   Discrimination on the Basis of Race

Olliff offers nothing beyond conclusory assumptions and gut feelings to prove that her return to the position of mail handler was motivated by racial discrimination.   Olliff, who is white, contends that African-American mail handlers on detail were not required to return to the Richmond Plant.   (Olliff Dep. 67:18-21.) In support of this contention, she names only one African-American mail handler whom she believes was allowed to remain on detail. (Id. 67:22-23.)   Olliff's theory is that, because a majority of the mail handlers are black and she is white, her return to the Richmond Plant served to fill a racial quota.

> Q.   And so because you're white, you think that must be the reason?
>
> A.   Yes.
>
> Q.   Is there any other reason?
>
> A.   You look at the ratio and everything—like I said, I believe it's all of it, but I guess we will get to that point.

(Olliff Dep. 69:9-15); (Def. Mem. In Supp. Of Summ J. Mot. 13.) However, she has offered no proof to support that theory and her

11

general and conclusory allegations do not create issues of material fact sufficient to defeat summary judgment.

### (ii) Gender Discrimination

Olliff makes a similarly insufficient showing to support her claim of gender discrimination.    As Olliff testified at her deposition:

> Q.    What is your basis for thinking you were moved back to mail handler because you are a female?
>
> A.    Because [Martin] made a statement that [he found] it hard to believe that [I] went from a [Level] 4 to 16, 17, 21, and 23-that he must have an issue with a female being in that [position] of authority.
>
> Q.    Did he say anything about the fact that you were a female, or is that just something you assumed?
>
> A.    Assumed.

(Olliff Dep. 70:5-14.)    Assumptions are insufficient to defeat summary judgment.  See Evans, 80 F.3d at 960.  Accordingly, Olliff has not sufficiently demonstrated unlawful gender discrimination.

### (iii) Age Discrimination

The age discrimination claim is also based on assumptions that cannot defeat summary judgment.    It appears from the deposition transcript that Olliff centers her age discrimination claim on nothing more than the fact that she is over forty years-old.

12

(Olliff Dep. 65:12-66:8.)  Admitting that no one at the USPS ever
mentioned anything to make her believe that she was returned to her
mail handler position due to her age, Olliff  unequivocally stated
that she felt she suffered age discrimination solely because she is
over forty.  (Id.) Without more, the fact that a plaintiff is over
forty  does  not  suffice  to  raise  a  reasonable  inference  of
discrimination or defeat summary judgment.

Olliff  did  tender  the  names  of  two  individuals  whom  she
thought were under forty and whom she believes were allowed to
remain on outside detail.  (Id. 66:9-25.) However, Olliff admitted
that she was not sure whether one of these employees was indeed
under forty.  (Id. 66:12-15.)  Furthermore, she was uncertain about
whether the other employee was permitted to remain on detail:

> Q.    [Is there anyone else who was] not brought back from
>       detail by Darryl Martin?
>
> A.    Brian Williams, I don't know how soon he came back, so I
>       can't really say.

(Id. 66:20-23.)  These bare, conclusory assertions, without any
supporting evidence, such as affidavits or declarations under oath,
do not raise the genuine issues of material fact required to defeat
a summary judgment motion.

13

### (iv) Discrimination Based on Disability

Olliff offers only assumptions in support of her
Rehabilitation Act claim as well.  She asserts that, because she is
deaf and was brought back from her detail position, her supervisor
has "no concerns or allowing [sic] for other deaf or hard of
hearing to have future advancements."  (Olliff Dep. 73:8-10.)
Olliff, however, offers nothing to support this statement.
Olliff's reasoning that, because she is deaf and was returned to
her position of mail handler, without more support, is circular and
insufficient to defeat summary judgment.

Olliff also claims discrimination based on her disability
because she feels that Martin "flatly refused to use [her]
services" and hired an outside interpreter who presumably was not
hearing impaired to fill the ad hoc interpreter's position.
(Olliff Dep. 74:5-6.)  There is nothing in the record that would
permit a jury to find discrimination in that action.  Furthermore,
it appears that Martin did not hire an outside interpreter.  The
USPS, through the declaration of the Richmond District's Manager of
Human Resources, showed that "no one replaced Ms. Olliff as an ad
hoc interpreter after she was placed back in her official position
as mail handler...[and] [t]here currently is no detail assignment
for an ad hoc interpreter in the Richmond District."  (Pulling
Decl. ¶ 12.)  Accordingly, Olliff's Rehabilitation Act claims are

14

suspect, without support, and insufficient to defeat summary judgment.

### C.   Legitimate, Nondiscriminatory Reasons

Having found that the Plaintiff cannot establish she was discriminated against, it is not necessary to consider whether the Defendant had legitimate, nondiscriminatory reasons for its actions.

### CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 14) will be granted, and the action will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff and to counsel for the defendant.

It is so ORDERED.

/s/   *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 20, 2008

15